IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENE BENFORD, <br> TDCJ-CID NO. 495065, <br><br> Plaintiff, <br><br> v. <br><br> DENNIS WALKER, et al., <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. H-10-0570 |

## MEMORANDUM OPINION AND ORDER

Gene Benford, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), filed a civil rights complaint alleging that health care providers violated his constitutional rights by denying him insulin. The court ordered Benford to submit a more definite statement regarding the details of his allegations. After reviewing his response (Docket Entry No. 17), which raised questions about Benford's mental state and the care he was receiving, the court ordered the Texas Attorney General's Office to produce a Special Report pursuant to Parker v. Carpenter, 978 F.2d 190, 191-92 n.2 (5th Cir. 1992), citing Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). The Attorney General, as Amicus Curiae, has filed a Special Report with supporting records. After reviewing the pleadings in light of the information provided in the Attorney General's Report, the court has determined that this action should be dismissed.

## I. Facts, Claims, and Allegations

Benford is a diabetic and requires insulin shots twice each day. He states he was transferred to the Estelle Medical Unit on May 22, 2009, and remained there until May 27, 2009. Benford alleges that he was denied insulin while he was assigned to Estelle and experienced hot flashes and sweating and a strong craving for water, symptoms which would indicate that the deprivation was harmful to his health. Although Benford's allegations indicate that the officials at Estelle may have not been aware of his insulin dependence, the court had some concerns due to Benford's apparent mental limitations and the fact that the Estelle Unit is a regional medical facility. See TDCJ-CID Website: http://www.tdcj.state.tx.us/stat/unitdirectory/e2.htm. In response to these concerns, the court ordered the Texas Attorney General to submit a report on Benford's care.

## II. The Report

The Attorney General's Special Report (Docket Entry No. 21) includes an affidavit from Justin Robinson, R.N., which summarizes the records submitted with the report. (Docket Entry Nos. 21-2; 21-4). The affidavit indicates that Benford has diabetes and is normally assigned to the TDCJ-CID Hodge Unit, which houses intellectually impaired inmates. (Docket Entry No. 21-4 at 2-3). On May 22, 2009, Benford was scheduled for a transfer to the

Estelle Unit for an optometry appointment. <u>Id.</u> On May 21, 2009, the day before the transfer, a nurse completed a Transfer Screening Form for Benford indicating that he should be placed on a special diet and tested twice daily for sugar levels. <u>Id.</u> at 2. A blood test was performed on Benford before he left the Hodge Unit on May 22. <u>Id.</u> The results indicated a poor level of blood sugar control with health risk implications. <u>Id.</u>

Nurse Robinson states that Benford continued to receive his insulin shots through 3 a.m. May 23, 2009, before he left the Hodge Unit. <u>Id.</u> at 3. However, Benford did not receive an insulin shot after he arrived at the Estelle Unit that day; nor did he receive any insulin shots on May 24, May 25, and May 26. <u>Id.</u> Benford's insulin treatment resumed only after he returned to the Hodge Unit on May 27, 2009. <u>Id.</u>

Although Robinson acknowledges that the records support Benford's claim of insulin denial, he asserts that there is no record of Benford suffering from hot flashes, sweating, and strong cravings for water as alleged in Benford's More Definite Statement. Robinson further denies that there is any record of Benford making any complaints about not receiving his insulin. <u>Id.</u>

The Attorney General's Report also asserts that Benford failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a). Benford's administrative grievances records reflect that he filed a Step 1 Grievance on June 9, 2009. (Docket

-3-

Entry No. 21-1 at 3). Benford states in the Step 1 Grievance that he did not receive insulin while he was at the Estelle Unit on May 23, 24, 25, and 26. <u>Id.</u> Practice Manager John Eaton responded to the Step 1 Grievance on July 2, 2009, stating, "As we discussed on 6/29/2009, you have received insulin and all other medications as ordered since being returned to HD [Hodges Unit]." <u>Id.</u> at 4. There is no indication that Benford filed a Step 2 Grievance afterwards. (<u>See</u> Docket Entry No. 21-1 at 3-13).

### III. <u>Analysis</u>

A. <u>Deliberate Indifference</u>

Prison custodians, upon whom prison inmates rely for health services and medical care, violate a prisoner's Eighth Amendment right not to be subjected to cruel and unusual punishment when they are deliberately indifferent to the prisoners' health and safety. <u>Estelle v. Gamble</u>, 97 S.Ct. 285, 292 (1976). "To establish deliberate indifference, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." <u>Bradley v. Puckett</u>, 157 F.3d 1022, 1025 (5th Cir. 1998), <u>citing</u> <u>Farmer v. Brennan</u>, 837, 114 S.Ct. 1970 (1994). The standard for deliberate indifference is high and requires more than a showing of negligence; there must be a showing that the

defendants were criminally reckless in failing to respond to a situation in which they were aware that a prisoner faced a substantial risk of serious harm. Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 1999); McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); Hare v. City of Corinth, Miss., 74 F.3d 633, 645 (5th Cir. 1996).

The Attorney General's Report confirms Benford's allegation that he was denied insulin for four days while he was at the Estelle Regional Medical Facility. Since Benford had been diagnosed as an insulin dependent diabetic, the failure to provide treatment could support a finding of deliberate indifference. See Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). See also Lolli v. County of Orange, 351 F.3d 410, 420-21 (9th Cir. 2003) (inmate displaying diabetic symptoms conveys a serious medical need and defendants' failure to respond to such need may constitute deliberate indifference); Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (A "'medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"), quoting Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).

An entry on Benford's Medication Pass List reflects that he had a prescription for insulin with a May 2, 2009, start date and a May 31, 2009, expiration date. (Docket Entry No. 21-2 at 5).

Entries on Benford's Diabetic Flow Sheet verify that he received his insulin twice daily through the morning of May 23, 2009, but that the shots then ceased until May 27, 2009. (Docket Entry No. 21-4 at 5). Benford's records contain a notation that there are no notes indicating that his blood sugar was checked on May 23, 24, 25, and 26. (Docket Entry No. 21-1 at 8). This record was made at the Hodge Unit in response to Benford's declaration that he wanted to file a grievance, apparently after he had returned from Estelle. Id.; (Docket Entry No. 21-1 at 6).

Although the report and records indicate that Benford had a serious medical condition that was not treated for four days, the court must also determine whether the deprivation was the result of deliberate indifference. It is not enough that an official should have known about Benford's condition, it must be shown that the official knew of the risk Benford was facing and ignored the risk while being mindful of the likely consequences of ignoring it. See Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 551 (5th Cir. 1997); Hare, 74 F.3d at 650. Benford must show that some specific individual was aware of his serious need of insulin and that the same individual knowingly denied him the insulin. Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983)("Personal involvement is an essential element of a civil rights cause of action."); Barksdale v. King, 699 F.2d 744 (5th Cir. 1983). There is no record showing that the named defendants (Dennis Walker,

Jerry Walker, and Lois Henry) had been notified that Benford needed insulin. Moreover, it is not clear from the records attached to the Attorney General's report that Benford's full medical condition was effectively conveyed to the appropriate health care providers at Estelle Unit when he arrived there for his optometry appointment. Nor do the records reflect that Benford ever complained of being denied insulin while he was at the Estelle medical facility.

None of the records show that Benford suffered physical harm as a result of not receiving insulin for more than four days. Although Benford declares that he experienced hot flashes, sweating or extreme thirst as a result of the deprivation, there is nothing to support this allegation. Benford's denial of insulin medication was only temporary and he does not appear to have suffered any lasting effects. Such an interruption or delay does not constitute deliberate indifference unless it resulted in substantial harm Mendoza v Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Although the court is concerned that a prisoner with a history of diabetes requiring insulin would be denied such medication at a medical facility, it does not appear that the denial was the result of deliberate indifference. While the court does not condone what happened to Benford at Estelle, these acts or omissions are not actionable under 42 U.S.C. § 1983. Brewer v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009); Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir.

1999). Therefore, this action is subject to dismissal as legally baseless under 42 U.S.C. § 1915(e).

B. <u>Exhaustion of Administrative Remedies</u>

A prisoner cannot file a claim regarding prison conditions pursuant to 42 U.S.C. § 1983 or any other Federal law if he has not exhausted available administrative remedies. 42 U.S.C. § 1997e(a). To do so, the prisoner must use all of the steps that are available so that the prison administration may address the issues on the merits. <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2382-83 (2006). This process is mandatory. <u>Id.</u>

The Texas prison system has a two-step grievance procedure for presenting administrative grievances. <u>Powe v. Ennis</u>, 177 F.3d 393, 394 (5th Cir. 1999). "The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level." <u>Johnson v. Johnson</u>, 385 F.3d 503, 515 (5th Cir. 2004). To exhaust, a prisoner must pursue a grievance through both steps. <u>Wright v. Hollingsworth</u>, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired. <u>Powe</u>, 177 F.3d at 394.

The Grievance Records (Exhibit A, Docket Entry No. 21-1) show

that Benford filed a Step 1 Grievance on June 9, 2009, after he returned to the Hodge Unit. (Docket Entry No. 21-1 at 3). However, none of the named defendants were mentioned in the grievance. Id. The administration's response was to arrange a meeting with Benford on June 26, 2009, where it was verified that he had been receiving his insulin and other medications since returning to the Hodge Unit. Id. at 4. Benford did not file a Step 2 Grievance. This action is therefore subject to dismissal because Benford failed to comply with the TDCJ-CID's administrative exhaustion procedures as required by 42 U.S.C. § 1997e(a). Johnson v. Louisiana ex rel. Louisiana Dept. of Public Safety and Corrections, 468 F.3d 278, 281 (5th Cir. 2006).

Although this court concludes that this action is subject to dismissal, the court is concerned that the TDCJ-CID medical system would allow an insulin dependent inmate to be denied his medication at a facility that is dedicated to handling medical issues. The fact that the inmate has limited intellect heightens the court's concern because of the additional difficulties the inmate may face in conveying his serious need for medical attention to prison officials. The court will therefore order that a copy of this Memorandum Opinion and Order be sent to the Director of the Health Services Division for advisory purposes.

## IV. Conclusion and Order

The court **ORDERS** the following:

1. The civil rights complaint (Docket Entry No. 1) is **DISMISSED** with prejudice. 28 U.S.C. § 1915(e).

2. The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties; the *Pro Se* Clerk for the United States District Court of the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702; and **the Director of the TDCJ-CID Health Services Division, 3009-A Highway 30 West, Huntsville, Texas 77340-069, by certified mail, return receipt requested.**

**SIGNED** at Houston, Texas, on this 19th day of April, 2011.

SIM LAKE
UNITED STATES DISTRICT JUDGE